# EXHIBIT A TO NOTICE OF REMOVAL

3651.00001

FILED

NOV 2 3 2005

CLERK OF THE DISTRICT COURT

**IN THE DISTRICT COURT OF DOUGLAS COUNTY, KANSAS
CIVIL COURT DEPARTMENT**

| | |
|---|---|
| **DIANE LONG-PALCHER (a.k.a.** ) | |
| **DIANE LONG), Individually, as** ) | |
| **Next Friend of J.L., and as Administratrix** ) | |
| **of the Estate of R.L; and** ) | |
| **PATRICK PALCHER** ) | **Case No.** 2005 CV 621 |
| ) | **Chapter 60** |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **UNIFIED SCHOOL DISTRICT NO. 497,** ) | |
| **DOUGLAS COUNTY, KANSAS, and** ) | |
| **DOUGLAS EICHER,** ) | |
| ) | |
| **Third Party Defendant.** ) | |
| ) | |

## PETITION

For their causes of action against defendants Unified School District No. 497, Douglas

County, Kansas and Douglas Eicher, plaintiffs state and allege as follows:

1.     During the relevant time period, plaintiffs Diane Long and Patrick Palcher,

common law husband and wife, were residents of U.S.D. No. 497.

2.     Plaintiff Diane Long is the natural mother of R.L. and J.L. both of whom were

unemancipated minors during the relevant time period and resided with her.

3.     R.L. is now deceased and Diane Long is the administrix of his estate which was

opened in Douglas County Probate Court, Case No. 03-P-68.

4.     Defendant U.S.D. No. 497 is a unified school district and governmental

subdivision of the state of Kansas, duly organized and existing pursuant to Article 6, § 5 of the

Constitution of the State of Kansas and K.S.A. 72-8201, *et seq.*, whose governing body is the

locally elected board of education.  U.S.D. 497 is situated in Lawrence, Douglas County, Kansas. Service may be obtained upon the Clerk of the Board of Education, 110 McDonald, Lawrence, Kansas 66044.

5.      Defendant, Dr. Douglas Eicher, an individual, resides in Lancaster County, Nebraska. Service can be obtained personally at his residential address of 707 Fairway Drive, Milford, Nebraska 68405.

6.      At all times relevant herein, defendant Dr. Douglas Eicher was the Director of Special Education Services for U.S.D. No. 497.

7.      Jurisdiction rests with this Court as the actions which form the basis of these counterclaims occurred in the State of Kansas and in particular in the County of Douglas.

8.      Venue is proper before this Court pursuant to K.S.A. 60-602, 60-603, and 60-608 as defendant USD 497 is situated in this county, the cause of action arose in this county, and because one or more of the plaintiffs are located in this county.

9.      U.S.D. No. 497 receives both federal and state financial aid to provide special education services for students attending school in the district and has a duty to use those funds to provide free appropriate public education for those students.

10.     U.S.D. No. 497 is required by federal and state law to provide a free appropriate public education to children residing in the school district.  In addition during the relevant time-period, U.S.D. No. 497 did not charge tuition to any parents of non-resident students enrolled in the district.

11.     Although U.S.D. No. 497's Nonresident Student Admission Policy, in effect during the relevant time period, states that "all applications shall be considered on an equal basis and no student's request shall be refused on the basis of race, gender, religion or ethnicity", the

policy does not expressly prohibit discrimination in the admission of nonresident students to plaintiff's schools based on the prospective student's disability.

12.     U.S.D. No. 497 has never accepted an application for admission by a non-resident student with autism.

13.     In practice, U.S.D. No. 497 and Dr. Eicher have intentionally and willfully discriminated against individuals with autism or individuals related to individuals with autism by refusing them admission to the district's schools or by seeking to deter their attendance in the district's schools through harassment, intimidation and humiliation.

14.     Both R.L., who was autistic, and J.L. qualified as students with special needs under federal and state special education laws.

15.     During the relevant time period, R.L. and J.L. were enrolled as students in U.S.D. No. 497.

16.     During each year they were enrolled in U.S.D. No. 497, the district counted both J.L. and R.L. as students in the district and received federal and state money for the provision of an appropriate education to these individuals.

17.     The educational services to be provided to R.L. and J.L. were set forth in Individualized Education Plans ("IEP's") developed by U.S.D. No. 497.

18.     Beginning in the 1999-2000 school year, U.S.D. No. 497 and Dr. Eicher using the allegation that plaintiffs were not residents of the district as a pretext embarked upon a campaign to deny R.L. and D.L. their rights to a free appropriate public education.

19.     Specifically, U.S.D. No. 497 and Dr. Eicher, adopted and sought to apply against plaintiffs an unwritten policy concerning the determination of residency for a minor that was contrary to state law.  By virtue of this unwritten policy, U.S.D. No. 497 and Dr. Eicher sought

{K0267489.DOC; 1}                                         3

to subject plaintiffs to additional elements or standards of residency which are not based on state statutes, regulations or regular school board policies while other residents who do not have children with disabilities are not required to meet the same standards.

20.     Then, without ever meeting or speaking with plaintiffs to discuss their residency, invaded plaintiffs' privacy and otherwise harassed them by hiring a private detective agency to conduct selective video surveillance of them.

21.     U.S.D. No. 497 and Dr. Eicher then, without any attempt to provide due process, asserted that plaintiffs were not residents of the district, demanded that the children be withdrawn from school and threatened legal action, including criminal prosecution for trespassing, if the children were not withdrawn from the school district.

22.     Even though no notice had been provided, plaintiffs requested that U.S.D. No. 497 provide them with a due process hearing before denying the minor children of their educational services and further requested that the children be admitted as non-residents in the event it was legitimately determined that they were not, in fact, residents.

23.     U.S.D. No. 497 denied plaintiffs' request for a due process hearing and advised that plaintiffs that because R.L. had autism neither he nor his brother J.L. could not be admitted to U.S.D. No. 497 as a non-resident student.

24.     U.S.D. No. 497 then allowed the minor children to return school in the district on the condition that Diane Long execute an "affidavit of residence" prepared by the district which was not required of other parents with children enrolled in the school district.

25.     After obtaining the affidavit, U.S.D. No. 497 and Dr. Eicher renewed their surveillance and harassment of plaintiffs.

26.     Dr. Eicher then decided, without Board approval, to file a lawsuit against

plaintiffs seeking to recover the alleged costs of the free appropriate public education provided by U.S.D. No. 497 to R.L. and J.L.

27.     Dr. Eicher did not take any steps to obtain approval of the Board of Education prior to filing this lawsuit.

28.     The Board of Education for U.S.D. No. 497 subsequently ratified this lawsuit at its August 14, 2000, meeting.

29.     The suit and the allegations against plaintiffs where then publicized resulting in further invasion of plaintiffs' privacy and harassment.

**COUNT I**
**DEFENDANT USD 497'S ACTIONS VIOLATED DEFENDANTS' RIGHTS UNDER THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT ("IDEA")**

30.     Plaintiffs incorporate by reference the allegations set forth in each of the foregoing numbered paragraphs.

31.     Defendant school district's demand to remove plaintiff children R.L. and D.L. from the defendant school district constituted a constructive change of placement which triggered procedural safeguards including the right to administrative review pursuant to IDEA and the administrative regulations thereto.

32.     Pursuant to 20 U.S.C. Section 1415(b)(1)(E), plaintiffs requested a due process hearing for the threatened expulsion and change of placement but said review was denied by the defendant school district in direct contravention of said statute thereby precluding the exhaustion of administrative remedies under the statute.

33.     Defendant school district's actions, including the refusal to provide a due process hearing, and to instead pursue this action against plaintiffs in state court, were in direct contravention of plaintiffs' rights under the IDEA.

34.    Defendant school district's attempt to deny plaintiffs the procedural safeguards guaranteed by the IDEA have resulted in plaintiffs incurring damages including unnecessary legal fees, expenses and costs incurred in defending this action.

35.    The consequences of defendant school district's violation of IDEA resulted in the denial of a free appropriate public education for plaintiffs' minor children.

WHEREFORE, plaintiffs pray for judgment against defendant USD 497 on Count I of this Petition for a finding that the minor children were subjected to an unlawful denial of their rights guaranteed by the IDEA; for a finding that plaintiffs were entitled to a free appropriate public education and an award of the attorneys' fees, expenses and costs incurred by plaintiffs in this litigation which have resulted in the denial of the free and appropriate public education; equitable relief including enjoining the defendant school district's refusal to abide by the statutory requirements of IDEA, specifically including the Procedural Safeguards which protect families from the abuses perpetrated by defendant school district; and such other relief as the court deems just and equitable.

## COUNT II
### DEFENDANTS' ACTIONS VIOLATED DEFENDANTS' RIGHTS UNDER THE DUE PROCESS AND EQUAL PROTECTION CLAUSES OF THE 14TH AMENDMENT TO THE UNITED STATES CONSTITUTION ENTITLING DEFENDANTS TO RELIEF PURSUANT TO 42 U.S.C. § 1983

36.    Plaintiffs re-allege paragraphs 1 through 35 as though fully set forth herein.

37.    By its actions as described herein, defendants, under color of statute, ordinance, regulation, custom, or usage, subjected plaintiffs to the deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States. In particular, as students, parents of students, in a publicly supported school district, plaintiffs have property and liberty interests in obtaining the benefits of a free and appropriate public education without those

{K0267489.DOC; 1}                                        6

benefits and services being wrongfully denied by a publicly funded school district.

38.     Defendants' actions deprived plaintiffs of their federally protected constitution rights to equal protection of the law and substantive and procedural due process under the Fourteenth Amendment to the United States Constitution.

39.     Defendants directly caused plaintiffs to suffer unnecessary invasions of privacy, humiliating public harassment and expelled the minor children from the school district in violation of federal and state law and erroneously applied the defendant school district's "Admission of Nonresident Students" policy to harass and humiliate plaintiffs.

40.     Plaintiffs have resided in Lawrence, Kansas since 1997.  When requested by defendant Eicher about their residence, plaintiff D.L. not only informed him concerning the issue of plaintiffs' residence, but also submitted an affidavit and an application for admission at his request.  Parents of general education students without disabilities, who reside within the school districts' attendance zones, as do plaintiffs, are not treated in this manner.

41.     On information and belief, defendant's Board of Directors has adopted no policies that define residency or specific terms and conditions which constitute eligibility factors for residency.  No policies address individual family living arrangements as qualifiers for residents or nonresidents, such as specialized day or night care for children with disabilities who have special needs and require special attendant care or supervision.  However, defendant school district has imposed unlawful disparate residency requirements on plaintiffs, which are not required of other residents.

42.     For purposes of admissions, residency is determined by K.S.A. 72-1046. Although plaintiffs have met the statutory requirements of the school residence definition, defendants have sought to impose nonexistent requirements, not in statutes, policies or mandates

on plaintiffs, such as "full time" and "location for sleeping" and "determining who can care for a minor child when parents are at work." Defendants do not impose these requirements on other school district residents or on parents of non-disabled children.

43.     The violations described above, including, but not limited to, the disparate treatment of plaintiffs regarding their Lawrence residency, the refusal to comply with state and federal special education laws, and the failure to adopt and implement school board policies for the nondiscriminatory treatment and protection of students with disabilities caused harm to plaintiffs. The violations and harm caused to plaintiffs were not inflicted upon children without disabilities, while attending a publicly funded school and constitute violations of plaintiffs' property and liberty interests.

44.     As a direct and proximate result of the actions described above, plaintiffs sustained actual damages, emotional suffering, humiliation, shame, embarrassment, worry, fear, anguish, and anxiety in an amount to be ascertained according to proof at trial.

45.     The actions of defendants, as described above, were willful, wanton and malicious, and in reckless disregard of plaintiffs' constitutional rights. Defendants knew or should have known it has the mandatory duty to implement admissions policies and deliver special education services for its students in a nondiscriminatory manner without regard to a student's disability. Defendants failed to take corrective action to admit plaintiffs to programs in its schools as required by law without undue harassment and discrimination.

46.     In all of this, defendants have, acting under the color of state law, deprived plaintiffs of rights, privileges, or immunities secured to them by the Constitution and laws of the United States in violation of 42 U.S.C. § 1983.

47.     Plaintiffs were forced to hire an attorney to represent them in this matter and

plaintiffs should be awarded reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, plaintiffs pray for judgment against defendants on Count II of their Petition for a finding that they have been subjected to unlawful discrimination and deprived of Constitutional rights in violation of 42 U.S.C. § 1983; for an award of compensatory damages; equitable relief including injunctive and declaratory relief finding that the minor children were entitled to attend school in U.S.D. 497 during the relevant time period and receive a free and appropriate public education; for their costs herein; for their reasonable attorneys' fees; and for such other relief as the Court deems just and equitable.

**COUNT III**
**THIRD CAUSE OF ACTION**
**DEFENDANTS' ACTIONS VIOLATED PLAINTIFFS' RIGHTS UNDER SECTION 504**
**OF THE REHABILITATION ACT OF 1973**
**(29 U.S.C. §§ 794 _et. seq._).**

48.     Plaintiffs re-allege paragraphs 1 through 47 as though fully set forth herein.

49.     Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §794 (Section 504), and the regulations promulgated thereunder, 34 C.F.R. Part 104, prohibits discrimination against persons with disabilities.  Section 504 prohibits the exclusion from the participation in, or being denied the benefits of, or being subjected to discrimination under any program or activity receiving Federal financial assistance.

50.     The practices described above, including defendants' continuing threats of denial of appropriate academic special education programming, the refusal to recognize plaintiffs' residency as other citizens of Lawrence are recognized and their refusal to allow individuals with autism to access of the educational services of the district in the same manner of other non-residents constitute prima facie discrimination based on the minor students' disabilities and results in ongoing disparate treatment of plaintiffs by the defendants.  These violations against

students with a disability while attending a publicly supported school district violate the prohibition against discrimination solely on the basis of disability.

51.     Defendant school district's policies discriminate on the basis of disability.  School district policy states no student will be denied admittance on the basis of race, gender, religion, or ethnicity.  On information and belief, the defendant school district has not adopted a policy statement regarding disabilities.

52.     On information and belief, defendant school district allows nonresident regular education students from other school districts to attend defendant school district without charge.  However, defendants would not accept plaintiffs' minor children solely because the minor children received special education services and defendants cited cost as the fundamental basis for its focus on plaintiffs' residency.  Defendants would not have incurred any additional costs by virtue of plaintiffs' attendance at its schools.  Defendants refused to recognize plaintiffs' residency because defendants deemed plaintiffs' special education children as excess costs.  Defendants' view and actions are discriminatory and constitute disparate treatment of the disabled minor children.  Defendants have violated plaintiffs' rights under Section 504 and the regulations promulgated thereunder by denying plaintiffs the benefits of receiving full and equal access to the public education programs and activities offered within the defendant school district without discriminating against and seeking to exclude them because of their disabilities.

53.     As a direct and proximate result of defendants' violation of Section 504, plaintiffs have suffered and continue to suffer humiliation, anxiety, mental anguish, emotional distress, and damage to reputation and personal relations in an amount to be ascertained according to proof at trial.

WHEREFORE, plaintiffs pray for judgment against defendants on Count III of their

Petition for a finding that they have been subjected to unlawful discrimination in violation of 29 U.S.C. § 794 (504); for an award of compensatory damages; equitable relief including injunctive and declaratory relief finding that the minor children were entitled to attend school in a non-discriminatory environment free from defendants' unlawful discrimination, an order directing defendant school board directors to adopt board policies which include discrimination against disabled students as prohibited conduct and require administrators to implement said policies in a nondiscriminatory manner; for their costs herein; for their reasonable attorneys fees; and such other relief as the Court deems just and equitable.

## COUNT IV
## DEFENDANTS' ACTIONS VIOLATED PLAINTIFFS' RIGHTS UNDER THE AMERICANS WITH DISABILITIES ACT (42 U.S.C. §§ 12101 *et. seq.*).

54.     Plaintiffs re-allege paragraphs 1 through 53 as though fully set forth herein.

55.     Title II of the ADA, 42 U.S.C. § 12131 et.seq and the regulations promulgated thereunder, 28 C.F.R. Part 35, governing state and local governmental entities, protects persons from discrimination on the basis of disability by public entities.   The ADA prohibits the exclusion from participation in, or being denied the benefits of the services, programs, or activities of the public entity, or being subjected to discrimination by such entity.

56.     The practices described above resulted in the denial of or wrongful threatening to interrupt plaintiffs' right to access appropriate academic special education programming and instructional opportunity for the minor disabled children.  Plaintiffs continued to be threatened with expulsion and ongoing disparate treatment of plaintiffs' children by the defendants. Defendnats do not subject other families with children without disabilities to these types of discriminatory conduct.  These violations against students with a disability while attending a publicly supported school violate the prohibition against discrimination solely on the basis of

disability.

57.     Defendants have violated plaintiffs' rights under the ADA and the regulations promulgated thereunder by denying plaintiffs the benefits of the services, programs, and activities without harassment and discrimination, to which their minor children are otherwise entitled to from the defendants.

58.     As a direct and proximate result of defendants' violation of the ADA, plaintiffs have suffered and continue to suffer humiliation, anxiety, mental anguish, emotional distress and damage to the minor children's reputation and personal relations in an amount to be ascertained according to proof at trial.

59.     Plaintiffs were forced to hire an attorney to represent them in this matter and plaintiffs should be awarded reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 12133.

WHEREFORE, plaintiffs pray for judgment against defendants on Count IV of their Petition for a finding that they have been subjected to unlawful discrimination in violation of 42 U.S.C. § 12131 et seq.; for an award of compensatory damages; equitable relief including injunctive and declaratory relief finding that the minor children were entitled to attend school in a non-discriminatory environment free from defendants' unlawful discrimination, an order directing defendant school board directors to adopt board policies which include discrimination against disabled students as prohibited conduct and require administrators to implement said policies in a nondiscriminatory manner; for their costs herein; for their reasonable attorneys' fees; and such other relief as the Court deems just and equitable.

**COUNT V**
**DEFENDANTS' ACTIONS CONSTITUTED AN INVASION OF PLAINTIFFS'**
**PRIVACY**

60.     Plaintiffs re-allege paragraphs 1 through 59 as though fully set forth herein.

{K0267489.DOC; 1}                                  12

61.     Plaintiffs' right of privacy has been invaded by defendants from the unreasonable publicity into their private lives caused by defendants' conduct.

62.     Defendants have unreasonably placed plaintiffs in a false light before the public by falsely claiming that plaintiffs are not residents of Lawrence.

63.     Plaintiffs have suffered damages and personal injuries as a result of defendants' wrongful, intentional, and outrageous conduct referenced above including Dr. Eicher's unauthorized use of video surveillance to invade plaintiffs' privacy and repeated threats to oust minor children from defendant school district.

64.     Plaintiffs have substantially complied with the notice requirements of K.S.A. 12-105(b) prior to filing this lawsuit by virtue of the previously filed petition in the federal court case which was served on the Clerk of the Board of Education.

WHEREFORE, plaintiffs pray for compensatory damages in an amount to compensate them for their damages; their costs herein; and such other relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand trial by jury on all issues in this litigation.

Respectfully submitted,

McAnany, Van Cleave & Phillips, P.A.
707 Minnesota Avenue
Fourth Floor
Post Office Box 171300
Kansas City, Kansas  66117-1300
Telephone:     (913) 371-3838
Facsimile:     (913) 371-4722

By: _____
          Gregory P. Goheen #16291

Attorneys for Plaintiffs

{K0267489.DOC; 1}

FEB 1 3 2006

## IN THE DISTRICT COURT OF DOUGLAS COUNTY, KANSAS
## CIVIL COURT DEPARTMENT

DIANE LONG-PALCHER (a.k.a.            )
DIANE LONG), Individually, as         )
Next Friend of J.L., and as Administratrix  )
of the Estate of R.L; and             )
PATRICK PALCHER                       )          Case No. 2005-CV-621
                                      )          Chapter 60
                    Plaintiffs,       )
                                      )
         v.                           )
                                      )
UNIFIED SCHOOL DISTRICT NO. 497,      )
DOUGLAS COUNTY, KANSAS, and           )
DOUGLAS EICHER,                       )
                                      )
              Third Party Defendant.  )
                                      )

### SUMMONS

To the above-named Defendant Unified School District No. 497, Douglas County, Kansas:

You are hereby notified that an action has been commenced against you in this court. You are required to file your answer to the petition with the court and to serve a copy upon the plaintiffs' attorney as follows:

> Gregory P. Goheen
> McAnany, Van Cleave & Phillips, P.A.
> 707 Minnesota Avenue, Ste 400
> P.O. Box 171300
> Kansas City, KS 66117

within 20 days after service of summons upon you.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the attached petition, which is incorporated herein by reference. Any related claim which you may have against the plaintiff must be stated as a counterclaim in your answer, or you will thereafter be barred from making such claim in any other action.

(Seal)                               Clerk of District Court

Dated: _2-9-06_                      By _____
                                          Deputy

{K0270200.DOC; 1}

**RETURN OF SERVICE OF SUMMONS**

I hereby certify that I have served this summons:

*(1) Personal Service.* By delivering a copy of such summons and a copy of the petition to the defendant on the date indicated: _____ _____, 2006.

*(2) Residence Service.* By leaving a copy of such summons and a copy of the petition at the usual place of residence of the defendant with some person of suitable age and discretion residing therein on the date indicated:

_____ _____ _____, 2006.
(Name)              (Address)          (Date)

*(3) Agent Service.* By delivering a copy of such summons and a copy of petition to the agents authorized by appointment or by law to receive service of process on the date indicated:

_____ _____ _____, 2006.
(Name)              (Address)          (Date)

(4) *Residence Service and Mailing.* By leaving a copy of such summons and a copy of the petition at the usual place of residence of the defendant and mailing by first-class mail on the date indicated a notice that such copy has been so left:

_____ _____ _____, 2006.
(Name)              (Address)          (Date)

(5) No Service. The defendant was not found in this county:

_____

_____
*(Signature and Title of Officer)*

Dated: _____

## IN THE DISTRICT COURT OF DOUGLAS COUNTY, KANSAS
### CIVIL COURT DEPARTMENT

DIANE LONG-PALCHER (a.k.a.     )
DIANE LONG), Individually, as     )
Next Friend of J.L., and as Administratrix  )
of the Estate of R.L.; and     )
PATRICK PALCHER,     )
     )
    Plaintiffs,     )
     )   Case No. 2005CV621
    v.     )   Chapter 60
     )   Division 1
UNIFIED SCHOOL DISTRICT NO. 497,  )
DOUGLAS COUNTY, KANSAS and   )
DOUGLAS EICHER,     )
     )
    Defendants.     )

2006 FEB 29  A 8: 01

BY_____

### EXTENSION OF TIME

On application of W. Joseph Hatley of Lathrop & Gage L.C., attorneys for

defendants Unified School District No. 497, Douglas County, Kansas, and Douglas

Eicher, said defendants are granted an additional ten (10) days to plead.

Clerk of the District Court

*M. Dawson*
Deputy Clerk

SUBMITTED BY:

LATHROP & GAGE L.C.

*W. Joseph Hatley*
W. Joseph Hatley    KS #12929
10851 Mastin, Suite 1000
Overland Park, Kansas 66210
(913) 451-5100  FAX (913) 451-0875
Attorneys for Defendants